FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

OCT 0 5 2010

JAMES R. LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

1  James A. McDevitt
   United States Attorney
2  Eastern District of Washington
   Matthew F. Duggan
3  Assistant United States Attorney
   Post Office Box 1494
4  Spokane, WA 99210-1494
   Telephone: (509) 353-2767
5

6
                    UNITED STATES DISTRICT COURT
7                   EASTERN DISTRICT OF WASHINGTON
8

9  UNITED STATES OF AMERICA,                )
10                          Plaintiff,       )
11         vs.                               )        10-CR-06040-RMP-2
12  TOMMY L. HONEYCUTT, JR.,                 )        Plea Agreement
                                             )
13                          Defendant.       )
14

15
          Plaintiff, United States of America, by and through James A. McDevitt,
16
   United States Attorney for the Eastern District of Washington, and Matthew F.
17
   Duggan, Assistant United States Attorney for the Eastern District of Washington,
18
   and Defendant TOMMY L. HONEYCUTT, JR. and the Defendant's counsel,
19
   Ulvar W. Klein, agree to the following Plea Agreement:
20
          1.    Guilty Plea and Maximum Statutory Penalties:
21
          The Defendant, TOMMY L. HONEYCUTT, JR., agrees to plead guilty to
22
   Counts 6, 7, 8, 9, and 10 of the Indictment filed on April 21, 2010 charging the
23
   Defendant with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2.
24
          The Defendant, TOMMY L. HONEYCUTT, JR., understands that the
25
   charges contained in the Indictment are Class C felonies and that sentences for
26
   these charges may be imposed consecutively by the Court. The Defendant,
27
   TOMMY L. HONEYCUTT, JR., also understands that the maximum statutory
28

Plea Agreement- 1
P00823RC.MDA.wpd

penalty for Wire Fraud, in violation of 18 U.S.C. § 1343, is not more than 20 years imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than three (3) years; restitution; and a $500 special penalty assessment.

The Defendant, TOMMY L. HONEYCUTT, JR., understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2.     The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement.  Sentencing is a matter that is solely within the discretion of the Court.  The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

Plea Agreement- 2
P00823RC.MDA.wpd

3.    <u>Waiver of Constitutional Rights</u>:

The Defendant, TOMMY L. HONEYCUTT, JR., understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

(a).    The right to a jury trial;

(b).    The right to see, hear and question the witnesses;

(c).    The right to remain silent at trial;

(d).    The right to testify at trial; and

(e).    The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.    <u>Elements of the Offense</u>:

The United States and the Defendant agree that in order to convict the Defendant of Wire Fraud, in violation of 18 U.S.C. § 1343, the United States would have to prove beyond a reasonable doubt the following elements:

(a)    On or about and between October 1, 2004 and continuing to on or about July 1, 2008, in the Eastern District of Washington;

(b)    the Defendant, TOMMY L. HONEYCUTT, JR., participated in a scheme to defraud and obtain money and property by materially false and fraudulent representations, omissions, pretenses and promises did cause to be transmitted certain writings, sings, signals and sounds in interstate commerce; and

(c)    used the wires to further the scheme.

Plea Agreement- 3
P00823RC.MDA.wpd

5.    <u>Factual Basis and Statement of Facts</u>:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for TOMMY L. HONEYCUTT, JR.'s guilty plea.  This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

SUZIE ZUNIGA was employed as a Material Coordinator with Fluor Hanford, a DOE Prime Contractor, from April of 1992 to July of 2008 at the Hanford Site in Richland, Washington.  As a Material Coordinator, Ms. ZUNIGA was primarily responsible for purchasing materials for FH using her DOE government funded p-card.  Specifically, her job was to obtain supplies for FH contract employees working at the Plutonium Finishing Plant.

PEDRO "PETE" ALVARADO JR., was employed as a Driver with FH at the Hanford Site in Richland, Washington, for approximately 27 years.  Mr. ALVARADO was an acquaintance of Ms. ZUNIGA and often picked up materials that were purchased with her p-card (both legitimate and otherwise).

TOMMY LYNN HONEYCUTT was employed as a Pipefitter with FH at the Hanford Site in Richland, Washington, for approximately 24 years.  Mr. HONEYCUTT has been in a romantic relationship with Ms. ZUNIGA.

**SUZIE ZUNIGA**

Defendant Suzie Zuniga was employed by government contractor Fluor Hanford (FH) as a Material Coordinator for the Plutonium Finishing Plant (PFP) at the U.S. Department of Energy (DOE) Hanford Site, in Benton County, Washington.  FH issued credit cards (known as purchase cards or "p-cards") to Suzie Zuniga to facilitate the purchase of supplies needed for the PFP.  FH purchase cards were issued by JP Morgan Chase Bank which established a credit

Plea Agreement- 4
P00823RC.MDA.wpd

1  purchase procedure with FH whereby the bank would draw down by draft or
2  electronic funds transfer (EFT) from a line of credit that the U.S. Treasury had
3  established with U.S. Bank for DOE expenses.  JP Morgan Chase used wire
4  communications to draw from the DOE's U.S. Bank line of credit once a month to
5  reimburse the purchase card expenses FH accumulated each month.

6        The JP Morgan Chase monthly draw down of funds from US Bank
7  occurred through, and as a result of, wire communications outside the State of
8  Washington.  Between October 1, 2004, and July 1, 2008, Fast Pipe and Supply
9  Co., Inc. ("Fast Pipe"),  Harold's Repair and Rental ("Harold's") and Kennewick
10 Industrial and Electric ("KIE") were designated by FH as authorized vendors of
11 supplies to the PFP and did provide supplies to the PFP during this time period.

12       In the normal course of business a material coordinator for the PFP would
13 receive requests for supplies from employees of the PFP.  The requests for
14 supplies by employees would often be transmitted by Electronic Bills of Materials
15 (EBOMS) to the material coordinator.  If the requested supply item was approved
16 for purchase, the material coordinator would note the order in the P Card Web
17 Solution System.  Once the supply item was purchased by the material coordinator
18 with a JP Morgan Chase Bank Credit Card,  a sales order would be prepared by the
19 vendor and provided to the material coordinator.  On a monthly basis, material
20 coordinators would sign and submit a Transaction Approval Report confirming
21 that their JP Morgan Chase Bank credit card account statements were consistent
22 with the purchases the material coordinator had made that month.

23       From on or about October 1, 2004, and continuing to on or about July 1,
24 2008, defendant Suzie Zuniga caused FH to make approximately 219 purchase
25 card transactions with vendors under the guise of PFP supply purchases from Fast
26 Pipe, KIE, Harold's and other vendors totaling approximately $564,326.01. The
27 219 purchase card transactions caused writings, signs, signals, and sounds to be
28 transmitted by wire transmission outside the State of Washington. During this time

Plea Agreement- 5
P00823RC.MDA.wpd

period, Zuniga, used wire transmissions, to wit: telephone calls, e-mails, and facsimile transmissions to place p-card orders with vendors for property which she intended for her personal use or pecuniary gain. Zuniga then used the purchased items for her own personal use or gain and/or provided items to Tommy Honeycutt and Pedro Alvarado.

The following chart illustrates the specific transactions as they relate to each count:

| Count | Date | P-Card Log Number | Wire Communication |
|-------|------|-------------------|--------------------|
| 6 | 1/25/05 | H00656748995 | $192.84 credit card transaction from Suzie Zuniga's FH issued government funded JP Morgan Chase credit card account # XXXX-XXXX-XXXX-6257. |
| 7 | 9/9/05 | H00656741060 | $1,525.90 credit card transaction from Suzie Zuniga's FH issued government funded JP Morgan Chase credit card account # XXXX-XXXX-XXXX-9557. |
| 8 | 4/19/06 | H00656741881 | $579.98 credit card transaction from Suzie Zuniga's FH issued government funded JP Morgan Chase credit card account # XXXX-XXXX-XXXX-9557. |
| 9 | 10/25/06 | H00656742403 | $950.00 credit card transaction from Suzie Zuniga's FH issued government funded JP Morgan Chase credit card account # XXXX-XXXX-XXXX-9557. |
| 10 | 1/18/08 | H006567410477 | $2,376.99 credit card transaction from Suzie Zuniga's FH issued government funded JP Morgan Chase credit card account # XXXX-XXXX-XXXX-9557. |

**PEDRO ALVARADO, JR.**

On August 7, 2008, Mr. ALVARADO was interviewed by DOE-OIG agents. During the course of the interview Mr. Alvarado admitted he knew about Ms. ZUNIGA's p-card misuse and also personally benefited from it. Mr.

Plea Agreement- 6
P00823RC.MDA.wpd

1  ALVARADO stated he picked  up and transported several items purchased with
2  Ms. ZUNIGA'S p-card to her house in Prosser, Washington, to include a stove,
3  refrigerator, microwave oven and several televisions.  Mr. ALVARADO admitted
4  he also received several items purchased with Ms. ZUNIGA'S p-card to include
5  two or three televisions, washer and dryer, laptop computer, refrigerator, stove,
6  lawnmower and a weed eater.

7  **TOMMY HONEYCUTT, JR**

8  On August 8, 2008, Mr. HONEYCUTT was interviewed by DOE-OIG
9  Agents at his residence in Pasco, Washington.  During the course of the interview,
10 Mr. HONEYCUTT admitted he knew about Ms. ZUNIGA's p-card misuse and
11 also personally received numerous items that were purchased with the p-card.  Mr.
12 HONEYCUTT recalled that Ms. ZUNIGA's p-card misuse began sometime in
13 2004. Mr. HONEYCUTT stated that if he was out shopping and saw something he
14 liked, he would call Ms. ZUNIGA and she would purchase it for him.  Some of the
15 items he received included a refrigerator, television, lawn mower, pressure washer,
16 rototiller, air compressor, iPod, digital camera, numerous power tools, two Honda
17 generators, two Garmin GPS radios, and Starbucks gift cards.

18      6.    Waiver of Inadmissibility of Statements:

19 The Defendant agrees to waive the inadmissibility of statements made in the
20 course of plea discussions with the United States, pursuant to Fed. R. Crim.
21 P. 11(f).  This waiver shall apply if the Defendant withdraws this guilty plea or
22 breaches this Plea Agreement.  The Defendant acknowledges that any statements
23 made by the Defendant to law enforcement agents in the course of plea discussions
24 in this case would be admissible against the Defendant in the United States's case-
25 in-chief if the Defendant were to withdraw or breach this Plea Agreement.

26
27
28

Plea Agreement- 7
P00823RC.MDA.wpd

7.    The United States Agrees:

(a.)    Not to File Additional Charges:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

8.    United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a.)    Base Offense Level:

The United States and the Defendant agree that the base offense level for Wire Fraud under 18 U.S.C. §1343 is 7 See U.S.S.G. §2B1.1(a)(1).

(b.)    Specific Offense Characteristics:

The United States and the Defendant also agree and stipulate that the base offense level is increased by an additional 4 levels due to an amount of loss of $25,000. See U.S.S.G. §2B1.1(b)(1)(C).

(c.)    Acceptance of Responsibility:

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than October 5, 2010, the United States will move for a two (2) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b).

Plea Agreement- 8
P00823RC.MDA.wpd

1    The Defendant and the United States agree that the United States may at its
2  option and upon written notice to the Defendant, not recommend a two (2) level
3  downward reduction for acceptance of responsibility if, prior to the imposition of
4  sentence, the Defendant is charged or convicted of any criminal offense
5  whatsoever or if the Defendant tests positive for any controlled substance.

6    Furthermore, the Defendant agrees to pay the $500 mandatory special
7  penalty assessment *($100 for each felony count, 18 U.S.C. § 3013(a)(2)(A))* to the
8  Clerk of Court for the Eastern District of Washington, at or before sentencing, and
9  shall provide a receipt from the Clerk to the United States before sentencing as
10  proof of this payment, as a condition to this recommendation by the United States.

11          (d.)    Final Offense Level:
12    The United States and the Defendant agree that the Defendant's final
13  adjusted offense level would be 9.

14          (e.)    Criminal History:
15     The United States and the Defendant have made no agreement and make
16  no representations as to the criminal history category, which shall be determined
17  after the Presentence Investigative Report is completed.

18      9.    Criminal Fine:
19    The United States and the Defendant are free to make whatever
20  recommendation concerning the imposition of a criminal fine that they believe is
21  appropriate.

22      10.    Incarceration:
23          The United States agrees to recommend that the Court impose a
24  sentence within the applicable sentencing guideline range.  The Defendant is free
25  to ask for any sentence he deems appropriate.

26      11.    Supervised Release:
27    The United States and the Defendant agree to recommend that the Court
28  impose a three (3)-year term of supervised release.

Plea Agreement- 9
P00823RC.MDA.wpd

12.  Restitution:

The Defendant hereby stipulates and agrees to an order of restitution in the amount of $25,000.

13.  Mandatory Special Penalty Assessment:

The Defendant agrees to pay the $500 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

14.  Payments While Incarcerated:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15.  Additional Violations of Law Can Void Plea Agreement:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever.

16.  Conditional Waiver of Appeal Rights:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive the right to appeal the sentence if the Court imposes a prison term within the guidelines, imposes a term of supervised release of no longer than three (3) years, waives the imposition of a fine, and imposes a $500 penalty assessment, and restitution not to exceed $25,000. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Counts 6-10 of the Indictment be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; the

Plea Agreement- 10
P00823RC.MDA.wpd

1  United States may move to reinstate all counts of Indictment No. 10-CR-06040-
2  RMP-2; and the United States may prosecute the Defendant on all available
3  charges involving or arising from his participation in wire fraud.  Nothing in this
4  Plea Agreement shall preclude the United States from opposing any post-
5  conviction motion for a reduction of sentence or other attack of the conviction or
6  sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255
7  (writ of habeas corpus).
8         17.    Integration Clause:
9         The United States and the Defendant acknowledge that this document
10 constitutes the entire Plea Agreement between the United States and the
11 Defendant, and no other promises, agreements, or conditions exist between the
12 United States and the Defendant concerning the resolution of the case.  This Plea
13 Agreement is binding only upon the United States Attorney's Office for the
14 Eastern District of Washington, and cannot bind other federal, state or local
15 authorities.  The United States and the Defendant agree that this agreement cannot
16 be modified except in a writing that is signed by the United States and the
17 Defendant.
18
19
20
21
22
23
24
25
26
27
28

Plea Agreement- 11
P00823RC.MDA.wpd

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

James A. McDevitt
United States Attorney

_____        $\underline{10/5/10}$
Matthew F. Duggan                                Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        $\underline{10-5-10}$
TOMMY L. HONEYCUTT, JR.                    Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____        $\underline{10/5/10}$
Ulvar W. Klein                                    Date
Attorney for the Defendant

Plea Agreement- 12
P00823RC.MDA.wpd